Filed 12/6/22 In re R.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>Defendant and Appellant. | F084189<br><br>(Super. Ct. No. JVDP-20-000127)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Annette Rees, Judge.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy GiacopuzziRotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A.C. (Mother) and F.G. (Father) are the parents of R.C., now three years old. In 2020, R.C. was taken into protective custody upon Mother's arrest in Riverside County. The case was subsequently transferred to Stanislaus County and, in 2021, R.C. was made a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b)(1) and (g).[1] Mother timely appeals the juvenile court's order terminating her parental rights under section 366.26.[2] Father is not a party to this appeal.

Mother's sole claim is that, on R.C.'s paternal side, the Stanislaus County Community Services Agency/Child and Family Services (the Agency) and the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law with respect to the duty of inquiry, and that remand for an adequate inquiry is required.[3] (§ 224.2, subds. (b), (e).)[4] The Agency disputes that its inquiry was deficient and maintains no reversible error occurred.

As set forth herein, on R.C.'s paternal side, the Agency did not inquire of anyone other than Father, despite Father's claim of potential Navajo ancestry through paternal great-grandfather, and although notice was sent to a representative with the Navajo tribe, the notice did not include relevant identifying information. (§ 224.2, subds. (b), (e).) As a result of these deficiencies, the juvenile court's finding that ICWA does not apply is

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.), effective January 1, 2023, but the amendment is not relevant to the issue raised on appeal.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[4] Section 224.2, subdivision (k), was amended, effective January 1, 2023, to provide for telephonic or other remote means of participation by an Indian child's tribe. (Assem. Bill No. 2960 (2021–2022 Reg. Sess.).) This amendment is not relevant to our resolution of Mother's appeal.

unsupported by substantial evidence of a proper, adequate, and duly diligent inquiry and the court abused its discretion in concluding otherwise. (§ 224.2, subd. (i)(2); *In re K.H.* (2022) 84 Cal.App.5th 566, 589–590 (*K.H.*); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 134 (*E.C.*).) Moreover, the error is prejudicial and requires reversal for correction.

As we explained in our recent decisions in *K.H.* and *E.C.*, "while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted, citing *In re A.R.* (2021) 11 Cal.5th 234, 252–253 (*A.R.*); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 153–154.) "[W]here the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, at p. 609, citing *A.R.*, *supra*, at p. 252; accord, *E.C.*, *supra*, at p. 154.) Error under ICWA and related California law presents such an exception, and determining whether an error in this context is prejudicial requires viewing the error through the lens of ICWA's remedial purpose. (*K.H.*, *supra*, at p. 588, citing *A.R.*, *supra*, at pp. 252–254; accord, *E.C.*, *supra*, at p. 135.) These laws are intended to ensure the rights of Indian children and Indian tribes are protected in dependency proceedings by giving tribes concurrent jurisdiction and the right to intervene when the proceeding involves an Indian child. (*In re W.B.* (2012) 55 Cal.4th 30, 48 (*W.B.*), citing 25 U.S.C. § 1911(b)–(c) & *Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 36 (*Holyfield*).) "Many cases do not proceed beyond the inquiry stage in the ICWA compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the tribes' right to notice in proceedings that may involve an Indian child is to be meaningfully safeguarded, as was

---

**5**     *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

intended by Congress and our state Legislature. (*K.H., supra*, at p. 591, citing *A.R., supra*, at pp. 252–253.)" (*E.C., supra*, at p. 135.)

As in *K.H.* and *E.C.*, "the error [here] is prejudicial because neither the [A]gency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. (*A.R., supra*, 11 Cal.5th at pp. 252–254.) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H., supra*, 84 Cal.App.5th at p. 591; accord, *E.C., supra*, 85 Cal.App.5th at p. 135.)

## PROCEDURAL HISTORY[6]

### I.     Petition and Detention

R.C. is the only child of Mother and Father, who were not married but had a years' long on-and-off relationship, and he did not have any half-siblings when this proceeding commenced. Mother and R.C. lived separately from Father, but all three resided in Stanislaus County. On April 26, 2020, the Blythe Police Department responded to a report that Mother was intoxicated and attempting to fight with people in a motel parking lot. Mother, who was planning to travel by bus to Oklahoma that night to visit a friend, was arrested for public intoxication. R.C., almost 12 months old, was taken into protective custody and then admitted to the hospital for observation and testing due to concern over possible developmental delay and malnutrition. R.C.'s preliminary examination showed a developmental delay of approximately three months and a left radial fracture in the healing stage, possibly due to abuse. Father was not present with Mother and R.C. in Riverside County, but was reached by telephone.

---

[6]     The sole issue on appeal is Mother's ICWA claim. Therefore, we need not include a detailed summary of facts.

On April 28, 2020, the Riverside County DPSS-CPS (the Department) filed an original petition on behalf of R.C. under section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support). As to Mother and Father, the petition alleged a history of domestic violence under section 300, subdivision (b)(1) (count b-5). As to Mother, the petition alleged four counts under section 300, subdivision (b)(1): intoxication (count b-1), neglect of health and safety based on R.C.'s healing fracture (count b-2), history of methamphetamine abuse (count b-3), and failure to provide a stable, suitable living environment and no means of support (count b-4). As to Father, the petition alleged failure to provide adequate food, clothing, shelter, medical treatment, support, and/or protection under section 300, subdivision (b)(1) (count b-6), and no provision for support under section 300, subdivision (g) (count g-1). The petition included an "INDIAN CHILD INQUIRY ATTACHMENT" form (Judicial Council form ICWA-010(A)), stating that R.C. is or may be eligible for membership based on Navajo ancestry and identifying the Potawatomi Cherokee tribe of Shawnee, Oklahoma.[7]

On April 29, 2020, the juvenile court held a detention hearing. Father's appointed counsel had not yet made contact with him, but Mother appeared by telephone. Through counsel, Mother denied the allegations, raised the issue of jurisdiction given that she had been a resident of Stanislaus County for the past 16 years, and stated ICWA did not apply. Father's counsel indicated ICWA may apply with respect to Father. The court found a prima facie showing that R.C. came within section 300, subdivisions (b) and (g), ordered him detained from his parents, and ordered that Mother receive visitation for two hours per week. The court deferred a determination on jurisdiction pending an investigation by the Department and directed Mother to complete and file a "PARENTAL

---

[7] In light of Father's subsequent interview statement about possible Navajo ancestry and the absence of further mention of the Potawatomi Cherokee tribe, the inclusion of this tribe on the attachment may be attributable to a clerical error by the Department.

NOTIFICATION OF INDIAN STATUS" form (Judicial Council form ICWA-020 (ICWA-020)).

## II. Jurisdiction and Transfer

On May 6, 2020, the Department mailed a "NOTICE OF CHILD CUSTODY PROCEEDING FOR INDIAN CHILD" form (Judicial Council form ICWA-030 (ICWA-030)) to the Bureau of Indian Affairs, the Department of the Interior, the Colorado River Indian Tribe, and the Navajo Nation.

On May 12, 2020, and on May 22, 2020, Father disclosed that his paternal great-grandfather, J.G., told him they have Navajo heritage, although he was not sure if J.G.'s stories were factual.

On May 22, 2020, the juvenile court continued the matter to allow for resolution of ICWA issues and jurisdiction. R.C. had been deemed medically fragile and the court directed the Department to communicate with Mother regarding training or programs for medically fragile children.

On June 15, 2020, the juvenile court held a jurisdiction hearing. Under section 300, subdivision (b)(1), the juvenile court sustained the allegations against Mother as to counts b-1 through b-4, and it sustained the count b-6 allegation against Father, modified to include only failure to the provide medical treatment or protection. The court did not sustain the section 300, subdivision (b)(1), allegation against Mother and Father under count b-5 for domestic violence, and it struck the allegation against Father under section 300, subdivision (g). In light of the Department's addendum report, which stated that "based on the statements made by [Mother] and [Father], there is no evidence to imply that this family is ICWA eligible," the court found that ICWA did not apply. The court also authorized an increase and modification of visitation, and granted the Department's motion to transfer the case to Stanislaus County.

On June 29, 2020, the juvenile court in Stanislaus County found R.C. was a resident, accepted the transfer, and set the matter for a disposition hearing. R.C. was still

in Riverside County in a medically fragile placement, but placement with a relative in Stockton was pending. The court indicated it would revisit the ICWA finding as appropriate and it set a disposition hearing.

## III. Disposition

On September 10, 2020, the juvenile court held a disposition hearing. Father, assisted by a Spanish interpreter, stated he did not have any Indian ancestry. Mother also stated she had no Indian ancestry. Both parents completed ICWA-020 forms reflecting no Indian ancestry, and the court made a finding that ICWA did not apply. The court elevated Father's status from alleged to presumed father; adjudged R.C. a dependent of the court; ordered him removed from Mother's and Father's physical custody under section 361.5, subdivision (c); and ordered reunification services for both parents.

## IV. Review Hearings

On April 6, 2021, the juvenile court held a contested six-month review hearing. The Agency recommended reunification services for Father be continued, but reunification services for Mother be terminated. Both parents regularly and consistently contacted and visited with R.C., and Father was making significant progress in resolving the problems that led to R.C.'s removal. Mother was not making significant progress, however, and she refused to reengage in treatment for substance abuse issues after the birth of her second child, Ro. C., in December 2020.[8]

Ro. C. was placed in the same foster home as R.C., and Mother was continuing to receive services in Ro. C.'s case. On that basis, Mother objected to termination of her reunification services in this case, and she continued to object to the removal of R.C. and the Agency's allegations.

---

[8] Ro. C. was the subject of a separate dependency proceeding, and Mother's unrelated appeal in Ro. C.'s case following termination of parental rights is pending in case No. F084730. (Evid. Code, §§ 452, subd. (d), 459.)

7.

The juvenile court found that Mother continued to use alcohol, refused to engage in treatment, and her progress was limited, and the court terminated her reunification services. The court found Father's progress good, however, and continued his reunification services.

On July 6, 2021, the juvenile court held a contested 12-month review hearing at which Father testified. The court found Father had made progress with his services, but there were concerns with his codependent relationship with Mother and his inability or unwillingness to accept the reasons underlying R.C.'s removal, R.C.'s developmental needs, and Mother's substance abuse issues. Due to COVID-19 delays and the fact that Father was hospitalized for injuries he sustained when he was hit by a car while walking, the court extended Father's services for an additional three months and continued the matter.

On October 25, 2021, the juvenile court held a combined, contested 12-month and 18-month review hearing at which Father testified. Although there was no dispute Father loved R.C., the court found Father's progress limited, particularly in view of R.C.'s special needs; terminated reunification services; and set a selection and implementation hearing under section 366.26.

## V.    Termination of Parental Rights

On March 14, 2022, the juvenile court held a section 366.26 hearing. The court found no new information regarding ICWA. The court terminated Mother's and Father's parental rights and selected a permanent plan of adoption for R.C.

Mother's counsel filed a timely notice of appeal.

8.

**DISCUSSION**

## I.      ICWA

### A.      Background

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' (*W.B., supra*, 55 Cal.4th at p. 48, citing 25 U.S.C. § 1911(b)–(c) & *Holyfield, supra*, 490 U.S. at p. 36), furthering 'federal policy "'that, where possible, an Indian child should remain in the Indian community'"' (*W.B., supra*, at p. 48, quoting *Holyfield, supra*, at p. 37). 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210; accord, *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421), and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding' (*In re K.T.* (2022) 76 Cal.App.5th 732, 741, citing 25 U.S.C. § 1911; accord, *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*))." (*E.C., supra*, 85 Cal.App.5th at p. 138, fn. omitted; accord, *K.H., supra*, 84 Cal.App.5th at p. 594.)

"'In 2006, California adopted various procedural and substantive provisions of ICWA.' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*), citing *In re Autumn K.* (2013) 221 Cal.App.4th 674, 703–704; accord, *W.B., supra*, 55 Cal.4th at p. 52; [*In re*] *T.G.* [(2020)] 58 Cal.App.5th [275,] 289–290.) The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. (Sen. Judiciary Com., Analysis of Sen. Bill No. 678 (2005–2006 Reg. Sess.) as amended Aug. 22, 2005, p. 6.)' (*W.B., supra*, at p. 52, italics added; accord, *In re Michael V.* (2016) 3 Cal.App.5th 225, 231–232, fn. 4.)

9.

"'In 2016, new federal regulations were adopted concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019).) Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. (Assem. Bill No. 3176 (2017–2018 Reg. Sess.); *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3.) Those changes became effective January 1, 2019 ….' ([*In re*] *D.S., supra*, 46 Cal.App.5th at p. 1048, fn. omitted.) Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020. ([*In re*] *T.G., supra*, 58 Cal.App.5th at p. 290, fn. 14, citing Assem. Bill No. 2944 (2019–2020 Reg. Sess.) ch. 104, § 15, pp. 23–25.)" (*K.H., supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C., supra*, 85 Cal.App.5th at pp. 138–139.)

### B. Summary of Duties of Inquiry and Notice

"Within the meaning of ICWA, federal and state law define an '"Indian child" [as] any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a).) In addition, state law provides, 'As used in connection with an Indian child custody proceeding, the term "Indian child" also means an unmarried person who is 18 years of age or over, but under 21 years of age, who is a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe, and who is under the jurisdiction of the dependency court, unless that person or their attorney elects not to be considered an Indian child for purposes of the Indian child custody proceeding. All Indian child custody proceedings involving persons 18 years of age and older shall be conducted in a manner that respects the person's status as a legal adult.' (§ 224.1, subd. (b).)" (*K.H., supra*, 84 Cal.App.5th at p. 596; accord, *E.C., supra*, 85 Cal.App.5th at p. 139.)

10.

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. ([*In re*] *T.G., supra*, 58 Cal.App.5th at p. 294; accord, *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321, fn. 8 (*Rylei S.*).) "'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.'" ([*In re*] *Ricky R.* [(2022)] 82 Cal.App.5th [671,] 678, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Under California law, '[j]uvenile courts and child protective agencies have "an affirmative and continuing duty to inquire" whether a child for whom a section 300 petition has been filed is or may be an Indian child.' (*In re N.G.* (2018) 27 Cal.App.5th 474, 481 (*N.G.*), citing § 224.3, subd. (a); accord, [*In re*] *T.G., supra*, at p. 290; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) As many courts have recognized, '[t]he ICWA investigatory process under state law is now expansive and potentially onerous.' (*In re S.H.* (2022) 82 Cal.App.5th 166, 174.)

"'The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G., supra*, 58 Cal.App.5th at p. 290.) ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); [Welf. & Inst. Code,] § 224.3, subd. (a).) Notice enables the tribes "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G., supra*, 58 Cal.App.5th at p. 288.)' ([*In re*] *Ricky R., supra*, 82 Cal.App.5th at p. 678.)

"'The duty of initial inquiry applies in every dependency proceeding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 88[3]–88[4] (*Austin J.*).) Federal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry "[a]t the first appearance in court of each party" by asking "each participant

11.

present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)  In addition, when [it] takes a child into temporary custody, the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child.  (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); [Welf. & Inst. Code,] § 224.1, subd. (c).)

"'"[R]eason to believe that an Indian child is involved" triggers the duty of further inquiry.  (§ 224.2, subd. (e), 1st par.)  "[R]eason to believe" exists whenever the court or [the agency] has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility.  (§ 224.2, subd. (e)(2)(A)–(C).)

"'The duty to provide notice arises only if [the agency] or the court "knows or has reason to know that an Indian child is involved."  (25 U.S.C. § 1912(a); see [Welf. & Inst. Code,] § 224.3, subd. (a); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884.)  Federal regulations define the grounds for reason to know that an Indian child is involved.  (25 C.F.R. § 23.107(c)(1)–(6) (2022).)  State law conforms to that definition.  (§ 224.2, subd. (d)(1)–(6).)'  ([*In re*] *Ricky R., supra*, 82 Cal.App.5th at pp. 678–679.)" (*K.H., supra*, 84 Cal.App.5th at pp. 596–598 [2022 Cal.App. Lexis 880, *18–21], fn. omitted; accord, *E.C., supra*, 85 Cal.App.5th at pp. 139–141.)

## II. Analysis

### A. Summary of ICWA Inquiry and Notice

Father provided conflicting information. In April 2020, he said he may have Navajo ancestry on his paternal side and during interviews in May 2020, he reported that his paternal great-grandfather, J.G., who died when he was under 10 years old, told him they had Navajo ancestry. However, neither he nor J.G. was a member of a tribe, resided on native lands or on a reservation, or received assistance from a tribe. Subsequently, in September 2020, Father denied having any Indian ancestry and he completed an ICWA form stating the same. No inquiry regarding this inconsistency appears in the record.

With respect to relatives, Father reported a happy childhood in Mexico City with parents G. Av. and F. Ar., and he had eight siblings. The record reflects that one brother, S.G., was living in or around Modesto during the course of this dependency proceeding and Father had some communication with him. The record also reflects that another brother is deceased, but the status of other relatives is unclear.

The Department mailed an ICWA-030 form to the Bureau of Indian Affairs, the Department of the Interior, the Colorado River Indian Tribe, and the Navajo Nation on May 6, 2020. However, the form listed paternal grandfather as F. Av. G., Sr., rather than F. Ar., as reported by Father, and the address listed for paternal grandfather was one associated with Father. Further, the form was mailed prior to the Department's interview with Father during which he disclosed possible Navajo ancestry through paternal great-grandfather J.G. and, therefore, the form did not include any of that information. On May 13, 2020, a hearing notice was emailed to the Navajo Nation intake worker.

Based on the foregoing, Mother argues that the Agency and the juvenile court failed to comply with their duties of inquiry under ICWA on R.C.'s paternal side and, therefore, the matter must be remanded for compliance. The Agency disputes that its inquiry was inadequate. It claims there were no "'readily available' paternal relative[s]" to ask, and the record reflects that it performed its duties with diligence. Alternatively,

the Agency contends that we should apply the test articulated in *Benjamin M.* and find no reversible error. (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.)

Recently, in *K.H.* and *E.C.*, we addressed the issue of error under ICWA at the inquiry stage, declined to follow the four general approaches articulated by other appellate courts for determining whether an ICWA error requires reversal, and concluded instead that the California Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H., supra*, 84 Cal.App.5th at pp. 590–591, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, 85 Cal.App.5th at pp. 135–136.) Applying the standards we articulated there, discussed further below, we conclude that the error is prejudicial and remand for a proper, adequate, and duly diligent inquiry is required. (*K.H., supra*, at pp. 620–621; *E.C., supra*, at p. 157.) Although we do not rely on *Benjamin M.* for our analysis, as addressed in *K.H.* (*K.H., supra*, at p. 617), we nevertheless observe that it would compel the same result we have reached here because "the probability of obtaining meaningful information is reasonable in the context of ICWA" (*Benjamin M., supra*, 70 Cal.App.5th at p. 744).

## B.    Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.'" (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C., supra*, 85 Cal.App.5th at p. 142.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….'" (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143.)

Under the substantial evidence standard, "'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts."

14.

[Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ([*In re*] *Caden C.* [(2021) 11 Cal.5th 614,] 640; accord, [*In re*] *Ezequiel G.* [(2022) 81 Cal.App.5th 984,] 1004.) The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 883), and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' (*ibid.*). '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' (*Id.* at p. 847.)" (*K.H., supra*, 84 Cal.App.5th at p. 601; accord, *E.C., supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C., supra*, 11 Cal.5th at p. 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G., supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra*, at p. 589; accord, *E.C., supra*, at p. 143; *In re Ezequiel G., supra*, at pp. 1004–1005.)

"'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ""the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.""' [Citation.] But ""[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court""' [Citations.] [¶] While each standard here fits a distinct type of determination

15.

under review, the practical difference between the standards is not likely to be very pronounced.' ([*In re*] *Caden C., supra*, 11 Cal.5th at p. 641.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but '"[a]n appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law."' (*People v. Vivar* (2021) 11 Cal.5th 510, 527, quoting *In re George T.* (2004) 33 Cal.4th 620, 634.) Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied. (*In re J.K.* [(2022)] 83 Cal.App.5th [498,] 504, citing *In re J.L.* (2017) 10 Cal.App.5th 913, 918; accord, [*In re*] D.*S., supra*, 46 Cal.App.5th at p. 1051; *In re Michael V., supra*, 3 Cal.App.5th at p. 235, fn. 5); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; see *People v. Ault* (2004) 33 Cal.4th 1250, 1266 ['[I]ndependent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the *final determination* of a party's rights, either as to the entire case, or on a significant issue in the litigation.'].)" (*K.H., supra*, 84 Cal.App.5th at p. 602; accord, *E.C., supra*, 85 Cal.App.5th at pp. 143–144.)

### C.     Agency and Juvenile Court Erred

#### 1.     Duties

As previously stated, the juvenile court and the Agency "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "[A]t the first appearance in court of each party, the juvenile court has a duty to 'ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'" (*K.H., supra*, 84 Cal.App.5th at p. 598, quoting § 224.2, subd. (c); accord, *E.C., supra*, 85 Cal.App.5th at p. 141.)

16.

"Further, the [Agency] has a broad duty of initial inquiry as follows: 'If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224, subd. (b).) '"[E]xtended family member" shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ['As used in connection with an Indian child custody proceeding, the terms "extended family member" and "parent" shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act.'].)

"If the court or the [Agency] 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (§ 224.2, subd. (e), italics added.) 'There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe....' (*Id.,* subd. (e)(1).)

17.

"Effective January 1, 2020, the California Rules of Court[9] require the [Agency] to, 'on an ongoing basis[,] include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes.' (Rule 5.481(a)(5).)" (*E.C., supra*, 85 Cal.App.5th at pp. 141–142; accord, *K.H., supra*, 84 Cal.App.5th at p 599.)

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

In this case, the Department inquired only of Father prior to transfer of this matter to Stanislaus County, and the Agency's position is that the inquiry was adequate, proper, and duly diligent given that paternal great-grandfather J.G. is deceased and Father reported his siblings would not be aware of J.G.'s stories of Navajo ancestry because he died before they were born. Alternatively, the Agency urges us to affirm the judgment because the record does not show "there was readily obtainable information that was likely to bear meaningfully upon whether [R.C.] is an Indian child." (Citing *Benjamin M., supra*, 70 Cal.App.5th at p. 744.) Mother argues that the Agency could have asked paternal grandfather about Indian ancestry given the ICWA-030 form indicating he lived with Father, and there were other paternal relatives to ask.

We agree with the Agency that the information provided in the ICWA-030 form for paternal grandfather is questionable, and it may be attributable to clerical error, particularly given that the form was completed prior to Father providing more detailed information, including about J.G. Further, in an interview conducted in Spanish, Father gave paternal grandfather's name as F. Ar., not F. Av. G., Sr., and there is no indication in the record that paternal grandfather lived in Modesto, let alone with Father. To the contrary, Father reported he lived at a ranch at the beginning of the proceeding.

---

**9** All further references to rules are to the California Rules of Court.

Thereafter, he lived in his car at one point and then moved into a trailer on the property of a family friend. In view of the record, it appears that the information listed in the notice for paternal grandfather was likely Father's information.

The Agency does not dispute problems with the notice, but asks us to find its ICWA inquiry adequate, proper, and diligent based only on its questioning of Father and the representations he made regarding his siblings' lack of knowledge. The law requires more of the Agency, however, concerning both the duty of initial inquiry of R.C.'s paternal relatives and the duty of further inquiry, which the Agency does not dispute was triggered in this case by Father's report of Navajo ancestry.[10] As stated in *K.H.*, "We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.' (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) Agencies and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once agencies provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H., supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

---

**10**     We note the disposition hearing was held prior to the enactment of Assembly Bill No. 2944 (2019–2020 Reg. Sess.), defining "reason to believe," but the resulting amendment to section 224.2, subdivision (e), was in effect by the time of the six-month review hearing. The duty of inquiry is a continuing one and in resolving Mother's appeal following termination of her parental rights, we focus on the postamendment version of the statute in effect at that time. (*In re A.M.* (2020) 47 Cal.App.5th 303, 320–321.) The Agency does not argue otherwise.

We further recognized in *K.H.* that "'"[a] parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible Indian ancestry."'" ([*In re*] Y.*M.* [(2022) 82 Cal.App.5th 901,] 914, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 743, fn. omitted.) Additionally, while a parent may or may not be in possession of information about Indian ancestry, we also cannot assume a parent's interest necessarily aligns with the tribe's interest. (*In re G.H.* (2022) 84 Cal.App.5th 15, 31.) By virtue of being haled into court for a dependency proceeding, the parent is facing challenges that have interfered with the parent's ability to provide a stable, safe home for the child, and in any given case, the parent may have an interest adverse to that of the tribe. (*Id.* at p. 31 [parents may be uninterested in or uncommitted to protecting tribal interests]; *In re J.W.* (2022) 81 Cal.App.5th 384, 393 (dis. opn. of Wiley, J. [protection of 'tribal interest cannot turn on whether [a relative] has an active interest in making tribal contact'; it is speculative '[t]o forecast … attitude about a tribal heritage'].)" (*K.H., supra*, 84 Cal.App.5th at p. 613.)

Although the Agency argues that neither it nor the court is obligated "to 'cast about' for investigative leads" (citing *In re A.M., supra*, 47 Cal.App.5th at p. 323), "[t]he law demands more than merely inquiring of … Father" (*K.H., supra*, 84 Cal.App.5th at p. 620). There may be cases in which there is no one else to ask, but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, "the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.) Here, however, the record indicates that Father has living relatives, including one brother in Modesto, and the record indicates that Father was cooperative in general. While it remains to be seen what information the Agency may be able to develop, it is required to make the effort, exercising due diligence in doing so, and to document its efforts.

Under these circumstances, the Agency did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b), (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the Agency conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).) As discussed next, the error is prejudicial.

**D. Prejudice**

"Where, as here, the deficiency lies with an agency's duty of initial [or further] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M., supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H., supra*, 84 Cal.App.5th at p. 606; accord, *E.C., supra*, 85 Cal.App.5th at p. 151.)

"'[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' (*In re Richard E.* (1978) 21 Cal.3d 349, 354; accord, *People v. Johnson* (2022) 12 Cal.5th 544, 605–606; *In re S.O.* (2020) 48 Cal.App.5th 781, 786–787; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780; *In re N.V.* (2010) 189 Cal.App.4th 25, 31), and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error' (*In re Celine R.* (2003) 31 Cal.4th 45, 60, citing *Watson, supra*, 46 Cal.2d at p. 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073; *A.R., supra*, 11 Cal.5th at p. 252)." (*K.H.,*

*supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, as previously stated, in *A.R.*, the California Supreme Court "recognized that while we generally apply a *Watson* likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. (*A.R., supra*, 11 Cal.5th at pp. 252–253.) In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect. (*Id.* at p. 252.)" (*K.H., supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, "'ICWA compliance presents a unique situation ….' (*In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, [*In re*] *N.G., supra*, 27 Cal.App.5th at p. 483.)" (*K.H., supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) Rather, "'[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' ([*In re*] *N.G., supra*, at p. 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H., supra*, at p. 608; accord, *E.C., supra*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA ([*In re*] *J.C.* [(2022) 77 Cal.App.5th [70,] 83; accord, *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078; *In re Michael V., supra*, 3 Cal.App.5th at p. 233), and parents may raise the claim of error for the first time on appeal ([*In re*] *Isaiah W., supra*, 1 Cal.5th at p. 13; accord, *In re A.W., supra*, 38 Cal.App. 5th at p. 665; [*In re*] *N.G., supra*, at p. 483; *In re K.R., supra*, at p. 708)." (*K.H., supra*, at p. 608; accord, *E.C., supra*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with

the tribe, not with a parent, the social services agency or the juvenile court. (*K.H., supra,* at p. 596; accord, *E.C., supra,* at pp. 139–140.)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate from the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H., supra,* 84 Cal.App.5th at p. 609; accord, *E.C., supra,* 85 Cal.App.5th at p. 154.) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical'" (*E.C., supra,* at p. 154, quoting *K.H., supra,* at p. 591, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–253), and "'requiring adequacy as the law directs "is generally the only meaningfully way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized'" (*E.C., supra,* at p. 154, quoting *K.H., supra,* at p. 609).

"[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H., supra,* 84 Cal.App.5th at p. 610, citing *A.R., supra,* 11 Cal.5th at

23.

pp. 252–254; accord, *E.C., supra*, 85 Cal.App.5th at p. 155.) On R.C.'s paternal side, the ICWA inquiry did not extend beyond Father and although a notice was transmitted based on Father's report of possible Navajo ancestry, it did not include the relevant information regarding paternal grandfather or paternal great-grandfather. Under these circumstances, the inquiry "'fell well short of that required to gather the information needed to meaningfully safeguard the rights to tribes, as intended under ICWA and California law'" (*E.C., supra*, at p. 156, quoting *K.H., supra*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes'" (*E.C., supra*, at p. 155, quoting *K.H., supra,* at p. 611). Therefore, the error is prejudicial and reversal is required.

We observe that although Mother confines her claim of prejudicial error to R.C.'s paternal side, and she reported that she had no Indian ancestry and paternal grandfather and maternal grandmother are deceased, she had two siblings, Co. C. and Ch. C., with whom her relationship was "'fine.'" She also had a cousin, P.R., who visited with R.C. and Ro. C. numerous times and expressed interest in having the children placed with her. Further, R.C. and Ro. C. were being cared for by a foster parent, V.W., who had longstanding familiarity with the family, as she was described as Mother's godmother, she had provided foster care for Co. C. and Ch. C., and Ch. C. was still living with her as an adult. (See § 224.2, subd. (b) [duty of inquiry includes those "who have an interest in the child"].) While the record reflects that in April 2020, the Department inquired of Ch. C. and she denied knowledge of any Indian ancestry, the record is silent regarding whether inquiries were made of anyone else, including Co. C., P.R., and V.W.

We caution that on remand, that court should assess the inquiry as a whole for adequacy. "Our high court did not express a view on second or successive appeals claiming ICWA error ([*In re*] *Isaiah W., supra*, 1 Cal.5th at p. 14), nor do we, but repeated appeals on this issue would be to the detriment of all and would come at an

24.

intolerably high cost to the child's interest in permanency and stability (*id.* at p. 12; accord, [*In re*] *Christopher L., supra*, 12 Cal.5th at p. 1081)." (*K.H., supra*, 84 Cal.App.5th at p. 620; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)

Accordingly, "'the juvenile court's finding that ICWA does not apply is conditionally reversed, and this matter is remanded. On remand, the juvenile court shall ensure the Agency conducts a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e),] and documents its inquiry in the record in compliance with rule 5.481(a)(5).'" (*E.C., supra*, 85 Cal.App.5th at p. 157, quoting *K.H., supra*, 84 Cal.App.5th at p. 621.) "'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [R.C.,]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [Agency]. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)'" (*E.C., supra*, at p. 157, quoting *K.H., supra*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the Agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA

25.

finding.  In all other respects, the court's orders terminating Mother's parental rights are affirmed.


MEEHAN, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.

26.